**IN THE COURT OF APPEALS OF IOWA**

No. 23-1735
Filed January 24, 2024

**IN THE INTEREST OF R.P.,**
**Minor Child,**

**E.P., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Pottawattamie County, Scott Strait, District Associate Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

Eric A. Checketts of Checketts Law, PLC, Glenwood, for appellant father.

Brenna Bird, Attorney General, and William E. Sales III, Assistant Attorney General, for appellee State.

Daniel McGinn of McGinn Law Firm, Council Bluffs, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Schumacher and Badding, JJ.

**BOWER, Chief Judge.**

A father appeals the termination of his parental rights to his child.[1] Because clear and convincing evidence supports a statutory ground for termination, termination is in the best interests of the child, an application of a permissive exception is not warranted, and the department of health and human services (department) made reasonable efforts toward reunification, we affirm.

## I.     *Background Facts and Proceedings*

The child was born in November 2022, testing positive for marijuana. At the time of the child's birth, the father was in jail for violating a no-contact order between the parents. The parents did not have a home and were "staying from place to place." The child was removed from the mother's custody and adjudicated in need of assistance. Earlier that year, the parents' parental rights had been terminated to another child, who was born in August 2021. This child was placed with the same foster family that had adopted the parents' older child.

The father participated in one supervised visit with the child in January 2023. That was the only in-person contact the father had with the child. Later that month the father was arrested for violating the no-contact order again and providing a false name to officers.

The father was released in March. He moved to Lincoln, Nebraska, and then to Council Bluffs, but he would not disclose his address. He reported he was "actively using methamphetamines and THC," but he was "ready to make a change

---

[1] The mother consented to termination of her parental rights.

in order to have a relationship with his child." The father was ordered to participate in drug screens, but he was a "no show" to both requested screens.

The father was arrested for forgery in April. He reported he was "actively using methamphetamines on the day of his arrest." The father was then "kicked . . . out" of a rehabilitation center because he had "a mental breakdown." He pled guilty to forgery, and the court sentenced him to thirty days in jail followed by supervised probation.

The State initiated termination-of-parental-rights proceedings in June. The termination hearing took place in September. The father was living in a residential treatment facility. He had engaged in video visits with the child. He testified he had been sober for "about two months" and was "working on getting a job as we speak, and also . . . at apartments . . . to be able to provide for [the child]" upon his release from the facility. Although he believed the child could be returned to his custody immediately, he asked for additional time to "show proof that [he is] clean, sober, and having a stable living and a stable job." The department and guardian ad litem opined termination of the father's parental rights would be in the best interests of the child.

The court thereafter entered an order terminating the father's parental rights pursuant to Iowa Code section 232.116(1)(e), (h), and (*l*) (2023). The father appeals.

## II.   *Standard of Review*

We review termination-of-parental-rights proceedings de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). Our paramount concern in termination proceedings is the best interests of the child. *In re L.T.*, 924 N.W.2d 521, 529

(Iowa 2019). We give weight to, but are not bound by, the juvenile court's fact findings. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).

### III. Discussion

*A. Grounds for Termination.* The father's rights were terminated on multiple grounds; we may affirm if any one of the grounds is supported by the record. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012) ("When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record."). We focus on paragraph (h). The father only challenges the fourth element—whether the child could be returned to his custody.[2] This element is satisfied when the State establishes the child cannot be safely returned to the parent at the time of the termination hearing. *In re T.W.*, No. 20-0145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020).

The father claims "[t]he simple fact is the child could have been placed with [him]." The father's own testimony belies his claim. He testified he would be at the facility until May 2024, but he could "get off three months early" if he paid his "probation fee." Children were not allowed to live at the facility. The father also claims "[t]here was no evidence offered to suggest that there was any threat of harm to [the child] if he were to have been placed with [the father], nor was there reasonably compelling evidence to suggest he would not have been well cared for." We disagree. The father has not taken advantage of services offered to him since August 2021, which includes the time services were offered to him for his

---

[2] The father also raises this claim in a separate issue; we address it here.

older child to whom his parental rights had been terminated. In that case, the juvenile court noted the father had "never visited or interacted with his daughter," had "not engaged in any of the offered services," and there were "serious concerns regarding [his] substance abuse history" and domestic abuse. Similarly, in this case, the father has failed to meaningfully engage in services to address the department's same concerns, and those concerns remained present at the time of the termination hearing. As the juvenile court found:

> [The father] has not prioritized his relationship with his son. He has continued to commit criminal law violations which resulted in his incarceration and separation from his son. He has continued to use illicit substances and has failed to maintain sobriety. He testified at the termination hearing that he last used approximately 60 days before the hearing. He has failed to complete any substance abuse treatment or document any period of prolonged sobriety. He did not regularly visit [the child], nor has he developed a relationship or bond with his son. [The father] has failed to place himself in a position to safely and appropriately care for his son. The child cannot be safely returned to the care of his father now or in the foreseeable future.

We concur with the court's assessment. Iowa Code section 232.116(1)(h) was satisfied.

*B. Best Interests.* Termination also must serve the child's best interests. We agree with the juvenile court's analysis on this point:

> The child needs and deserves permanency in his life. The child has been living with the [foster family] and with his full older sibling since his release from the hospital at birth. They are the only family he's ever known, and he is obviously bonded to them. He has only had a single in-person visit with one of his parents who has essentially no relationship with them. In giving primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional conditions and needs of the child, the Court finds it is in the child's best interest that the Petition should be granted so that this child can have permanency and stability in his life.

*C. Exceptions to Termination.* The father correctly notes the court "has discretion based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in Iowa Code [s]ection 232.116(3) to save the parent-child relationship." The father acknowledged the child was nine months old at the termination hearing and he had spent "[a]bout six months" of the child's life in custody. During the time he was not in custody, the father had a single visit with the child, continued to use drugs, and committed additional crimes. Under these circumstances, no exceptions under section 232.116(3) apply to preclude termination.

*D. Reasonable Efforts.* The father also contends the department failed to make reasonable efforts toward reunification. Our courts have recognized that the State must show reasonable efforts toward reunification "as a part of its ultimate proof" that grounds for termination exist. *See, e.g.*, *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). Specifically, the father claims the department "did not work with [him] at maximizing contact between him and the child."

To the contrary, the record shows from the time of the initial department involvement in this case, caseworkers attempted to facilitate contact between the father and the child. The father had an appointment scheduled with the caseworker in early January upon his release from jail, but "he did not attend." When the caseworker attempted to reschedule, she was "unable to reach" him. The father also acknowledged he "refus[ed] video visits while [he was] incarcerated," explaining, "no child should have to go through seeing their parent in county colors through video." The father claimed "with [his] legal issues constantly, it's just been hard" to "engage in services and work towards

reunification," but he acknowledged he committed another crime while his "son was born and [he] knew [he] had this case to deal with to reunify with [his] son." He stated, "[A]t the time of me doing the forgery, I was using, so I wasn't in my right state of mind."

As the juvenile court found, "[The father] has not completed any of the services offered to him or ordered by the Court.  The [d]epartment has struggled with maintaining contact with [the father] as he was in and out of jail throughout the case."  In other words, the father declined, refused, or was unable to take advantage of services as a result of his own actions.  We find the department met its reasonable-efforts obligation.

We affirm the termination of the father's parental rights.

**AFFIRMED.**